IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kathy Vernon, ) | C/A No. 0:11-2096-MGL-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Kathy Vernon ("Vernon") brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), determining that Vernon is no longer disabled. Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be remanded for further proceedings.

**ADMINISTRATIVE PROCEEDINGS**

In a determination dated September 15, 2004, Vernon was found to be disabled with an onset date of February 1, 2004. Following a termination proceeding, the ALJ found that Vernon was no longer disabled as of April 30, 2008. This determination was upheld upon reconsideration, and Vernon requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 16, 2010, at which Vernon, who was self-represented, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on August 18, 2010 finding that Vernon was not disabled. (Tr. 15-25.)

Vernon was thirty-seven years old as of April 30, 2008, the date the ALJ found that Vernon's condition had medically improved and that she was no longer disabled. (Tr. 24.) She has a ninth-grade education and past relevant work experience as a fast food worker and a fabric cutter. (Tr. 210.)

The ALJ found as follows:

1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated September 15, 2004. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: depression. This impairment was found to meet section(s) 12.04(A)(1)(a), (c), (e), (g) and B(2), (3) of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

3. Through April 30, 2008, the date the claimant's disability ended, the claimant did not engage in substantial gainful activity (20 CFR 404.1594(f)(1)).

   \* \* \*

4. The medical evidence establishes that, as of April 30, 2008, the claimant had the following medically determinable impairments: depression, disc protrusion and disc bulge at L5-S1, disc bulge at L4-L5 with facet hypertrophy, chronic headaches (non-severe), dysthymic disorder and generalized anxiety disorder. These are the claimant's current impairments.

   \* \* \*

5. Since April 30, 2008, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

   \* \* \*

6. Medical improvement occurred as of April 30, 2008 (20 CFR 404.1594(b)(1)).

   \* \* \*

7. The medical improvement is related to the ability to work because, as of April 30, 2008, the claimant's CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i)).

8. As of April 30, 2008, the claimant continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

   \* \* \*

PJG

9. Based on the impairments present as of April 30, 2008, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, I find the claimant is able to lift or carry 20 pounds occasionally and 10 pounds frequently. I find she can sit, stand, or walk for six hours each out of an eight-hour workday. I also find she can frequently, rather than constantly, balance, kneel, crouch and crawl. However, I find she can only occasionally climb ladders, ropes, or scaffolds. Further, I find she is able to concentrate, persist and work at pace to do simple, routine, and repetitive tasks involving one- to two-step instructions for at least two hours at a time. Additionally, I find she can interact appropriately with co-workers and supervisors in a stable, routine type of setting but she is limited to only occasional interaction with the public.

\* \* \*

10. As of April 30, 2008, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

11. On April 30, 2008, the claimant was a younger individual age 18-49 (20 CFR 404.1563).

\* \* \*

12. The claimant has a limited education and was able to communicate in English (20 CFR 404.1564).

13. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

14. As of April 30, 2008, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present as of April 30, 2008, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

\* \* \*

15. The claimant's disability ended as of April 30, 2008 (20 CFR 404.1594(f)(8)).

(Tr. 16-25.) On June 14, 2011, the Appeals Council denied Vernon's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 3-6.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or

*PJG*

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

- (1) whether the claimant is engaged in substantial gainful activity;

- (2) whether the claimant has a "severe" impairment;

- (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

- (4) whether the claimant can perform his past relevant work; and

- (5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050,

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).

PJG

1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

The plaintiff raises the following issues for judicial review:

Issue I. Combination of Impairments. The ALJ is required to consider the combination of all of a claimant's impairments, both severe and non-severe. The ALJ fragmented Vernon's impairments, failing to properly consider the combination of Vernon's mental impairments and physical impairments. Where the ALJ fails to adequately consider the combination of a claimant's impairments, can his decision be supported by substantial evidence?

PJG

Issue II.   Treating physicians' opinions are entitled to great weight in the absence of compelling contrary evidence and may be entitled to controlling weight. The ALJ must give good reasons for discounting any doctor's opinion. The ALJ gave little weight to the medical opinion of Dr. Reeves, whose opinions support a finding of disability, for reasons that are not well-based in the record. Where the ALJ disregards the opinions of treating physician for reasons not well-based in the record, has he committed legal error?

Issue III.   Where new evidence is submitted to the Appeals Council that is sufficiently material that it might have affected the Commissioner's final decision, the Meyer case requires that evidence be weighed. In this case there was such evidence, and it was not in fact weighed. Where there is new and material evidence submitted at the Appeals Council, and where that evidence might have affected the findings of the factfinder, must the case be remanded so that the Commissioner can weight that evidence?

(Pl.'s Br., ECF No. 30.)

## DISCUSSION

**A.   Combination of Impairments**

Vernon argues that the ALJ failed to consider her impairments in combination in determining whether she was disabled. The court observes that Vernon does not specify any impairment that the ALJ ignored, but instead argues that the ALJ failed to consider the combined effects of all of Vernon's impairments. Specifically, Vernon argues that medical records demonstrate that her mental impairments and her physical impairments are intertwined and that her physical impairments aggravated her mental impairments. (See Pl.'s Am. Br. at 22-24, ECF No. 30 at 25-27.)

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant has an impairment that meets or equals the requirements of one of the Listings and is therefore presumptively disabled. "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment;

PJG

the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1508.

When a claimant has more than one impairment, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523. In Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit explained:

> [A] failure to establish disability under the listings by reference to a single, separate impairment does not prevent a disability award. It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. In recognizing this principle, this Court has on numerous occasions held that in evaluating the effect[] of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them. . . . As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.

Id. at 49-50 (internal citations omitted).

In this case, the ALJ found at Step Three of the sequential analysis that "[s]ince April 30, 2008, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)." (Tr. 18.) In making this determination, the ALJ considered Vernon's physical impairments as well as her mental impairments. Further, the ALJ considered the effects of all of Vernon's symptoms, including problems with crowds, symptoms of social avoidance and panic attacks, and continual reports of pain, in determining Vernon's residual functional capacity.

PJG

The court finds that the ALJ has provided sufficient discussion based on Vernon's alleged impairments and limitations to demonstrate that he considered Vernon's impairments in combination. Additionally, the decision includes sufficient findings regarding Vernon's impairments and limitations for the court to review the ALJ's conclusion on this issue. In further support of this conclusion, the court observes that Vernon has offered no explanation of how more discussion or explanation may have changed the outcome in this case. Accordingly, Vernon has failed to show that the ALJ's decision is controlled by an error of law or is unsupported by substantial evidence. See, e.g., Thornsberry v. Astrue, C/A No. 4:08-4075-HMH-TER, 2010 WL 146483, at *5 (D.S.C. Jan. 12, 2010) ("Accordingly, the court finds that while the ALJ could have been more explicit in stating that his discussion dealt with the combination of Thornsberry's impairments, his overall findings adequately evaluate the combined effect of Thornsberry's impairments. Any error on the part of the ALJ in failing to use explicit language is harmless.").

**B.     Treating Physician**

Vernon next argues that the ALJ failed to properly evaluate the opinion of Dr. Douglas A. Reeves, one of Vernon's treating physicians. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434

F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

The opinion at issue is contained in a "dictated but not read" medical note dated February 4, 2009. Under the heading "SUBJECTIVE," Dr. Reeves stated that the purpose of Vernon's appointment was "to discuss her back issues as a general followup." (Tr. 243.) Dr. Reeves indicated that he had been following Vernon for her back issues since 2002 and stated the following:

> She had initially had pain at her job for about a year and then had an acute injury in February 2002 and we have been following her since. She has developed chronic low back pain, mainly on the left side along with pain that radiates into the left leg. She went through multiple rounds of medications and physical therapy. She was seen by back surgeons, pain management, and chiropractor. Basically, she has got to the point that she really could not do her job any more. This was complicated by other issues including migraine headaches and battles with depression and anxiety. She applied for disability a few years ago and we have continued to follow her mainly to manage her medications and any flare-ups she may have. We have reevaluated several times over the years. She has had reevaluation by pain management as well. Recently, she had trouble doing physical therapy because of her transportation issues. She has never returned to her pre-injured level and has perhaps has gotten a little bit of recent improvement with some muscle stimulation units. Ms. Vernon reports that she is able to do a few things around the house, but cannot really do even any heavy housework because of flares of back up too much and she has not done any heavy lifting further since her back began hurting and continues to be in that situation. I reviewed her other physician's and issue with her today as well. She sees Dr. Wiley in Powdersville who is a psychiatrist and has her on Lexapro, diazepam, and Geodon. She is also followed by Dr. Veerabagu in Anderson for stomach issues and was on Prilosec. She sees Dr. Scott of neurology for her migraine headaches and is scheduled to see him again sometime in the next few months. He has her on Neurontin, Treximet, and Maxalt on an as-needed basis. There were apparently issues as to Neurontin versus Lyrica and she is on Neurontin, and then I prescribe her Lortab and a muscle relaxer.

(Id.) (errors in original).

PJG

Dr. Reeves noted that he did not repeat her physical examination during this visit and stated the following under "ASSESSMENT AND PLAN":

> Ms. Vernon has chronic low back pain and left leg pain. Her most recent imaging studies had shown disc protrusion and L5-S1 that certainly could be indicating the exiting left L5 nerve root. She had chronic level of pain managed with the above noted medicines and she has other issues as outlined above. She was not able to maintain any type of gainful employment, and I do not feel like that situation is changed. We will continue to see her on a routine basis for followup of her back pain. Next plan is schedule for April or May 2009.

(Id.)

In giving this opinion little weight, the ALJ stated that Dr. Reeves

> indicates that [Vernon] is not able to maintain any gainful employment but provides no specific findings and in fact did no physical exam that day. It appears he is merely parroting what [Vernon] subjectively told him earlier in the treatment note. Here, the objective medical evidence of record shows that the claimant realized significant medical improvement by April 30, 2008, as found by the State agency, and she was capable of performing light work with the additional limitations I have found.

(Tr. 23.) In discussing some of Vernon's medical records, the ALJ noted that Vernon reported to Dr. Reeves at a February 2008 that she had no radiating pain and Dr. Reeves noted that Vernon's range of motion was stable. Further, the ALJ observed that Vernon had repeated negative straight leg raises from Upstate Medical Rehabilitation dating back to 2002 and that during an April 2003 physical examination, Vernon "demonstrated normal station and gait, good range of motion in the low back, 5/5 motor strength in the lower extremities, and equal deep tendon reflexes." (Tr. 23.) However, the ALJ stated that he restricted Vernon to light work with additional postural limitations based on her continual reports of pain to Dr. Reeves.

The plaintiff argues that the ALJ erred in affording Dr. Reeves's opinion little weight. Specifically, Vernon appears to argue that although Dr. Reeves did not provide precise functional limitations, his opinion is sufficient to support a finding of disability. To the extent that the ALJ

Page 10 of 16

PJG

discounted Dr. Reeves's opinion based on the fact that he did not perform a physical examination of Vernon on the day that the opinion was issued, Vernon points out that there is no such requirement and observes that Dr. Reeves had been regularly treating Vernon for seven years at the time he issued the opinion. Further, Vernon argues that Dr. Reeves considered more than Vernon's subjective complaints, such as Vernon's treatment with other physicians and her most recent MRI. Finally, although Vernon was not experiencing radiating pain during her February 2008 visit, which was the visit immediately preceding April 30, 2008, Vernon argues that her radiating pain was intermittent or occasional, based on other records. (Pl.'s Am. Br. at 28, ECF No. 30 at 31) (citing Tr. 246, 459, 462, 475, 486).

As an initial matter, upon review of the ALJ's decision, it does not appear that he discounted Dr. Reeves's opinion because he did not perform a physical examination of her on the date of his opinion. The court observes that Dr. Reeves's opinion is contained within a treatment note. Therefore, it appears that, as acknowledged by Vernon, the ALJ was observing that Dr. Reeves's opinion did not contain any specific functional limitations, which may have been present under the heading "PHYSICAL EXAMINATION" if one had been performed. Although Dr. Reeves's opinion mentions recent imaging studies, his opinion does not appear to contain any functional limitations that would be inconsistent with Vernon's residual functional capacity as determined by the ALJ. See 20 C.F.R. § 404.1527(e) (stating that opinions that a claimant is "disabled" or "unable to work" are reserved to the Commissioner).

Upon review of the parties' arguments, the medical evidence, and the ALJ's decision, the court concludes that Vernon has failed to demonstrate that the ALJ erred in evaluating Dr. Reeves's opinion. Vernon's reliance on selective medical evidence that may arguably support additional limitations is unpersuasive. The court may not substitute its judgment for the Commissioner's and

finds that the ALJ's conclusions are comfortably within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Accordingly, the court finds that Vernon has failed to demonstrate that the ALJ's decision with regard to Dr. Reeves's opinion is unsupported by substantial evidence or controlled by an error of law. See Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); see also Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding that an ALJ may weigh other factors brought to his or her attention that tend to support or contradict a treating physician's opinion) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's finding that two treating physicians' opinions were entitled to minimal weight, in part, because the opinions were in the form of a checklist, unsupported by objective evidence, and based on the claimant's subjective complaints).

## C. New Evidence Submitted to the Appeals Council

Vernon next contends that the Appeals Council erred in failing to weigh new and material evidence submitted to it after the ALJ's decision. That evidence consisted of a January 2011 letter from Dr. Dana Wiley. (Tr. 578.) Dr. Wiley indicates that she was Vernon's treating psychiatrist from May 17, 2005 through September 28, 2009. She opined that Vernon continued to have mood swings, tearfulness, anxiety, irritability, and depression, which "would significantly impair her ability to work in any capacity due to her poor concentration and mood swings which would significantly decrease her ability to interact appropriately with supervisors, co-workers, or customers." (Id.) Dr.

PJG

Wiley further stated that Vernon's psychiatric symptoms would be exacerbated by normal work stressors and that "[g]iven the severity and chronic nature of her symptoms, even when compliant with recommended psychiatric treatment, Mrs. Vernon's overall prognosis would be considered poor." (Id.) The Appeals Council admitted into the record and considered this additional evidence.

The law provides that evidence submitted to the Appeals Council with the request for review must be considered in deciding whether to grant review " 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.' " Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (*en banc*) (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is new "if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. When a claimant seeks to present new evidence to the Appeals Council, he is not required to show good cause for failing to present the evidence earlier. Id. at 96 n.3; cf. 20 C.F.R. § 404.970(b).

During the pendency of this action, the United States Court of Appeals for the Fourth Circuit issued an opinion providing additional instruction with regard to additional evidence submitted to the Appeals Council. Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011). The Court explicitly held that "[t]he Appeals Council need not explain its reasoning when denying review of an ALJ decision." Id. at 702. In determining whether the Commissioner's final decision is supported by substantial evidence and reached through the application of the correct legal standard, the court must " 'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.' " Id. at 704 (alterations in original) (quoting Wilkins, 953 F.2d at 96). If the court cannot determine whether, in light of the additional evidence submitted, the Commissioner's decision is supported by substantial evidence, remand is warranted.

*PJG*

Meyer, 662 F.3d at 707 (reversing and remanding the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits). The Court recognized, however, that in some cases the record would clearly show that the additional evidence did not cause the ALJ's decision to be unsupported by substantial evidence. See id. (discussing Smith v. Chater, 99 F.3d 635, 638-39 (4th Cir. 1996)).

In this case, the additional evidence submitted to the Appeals Council and admitted into the record raises a question as to whether the ALJ's opinion is supported by substantial evidence. As stated above, in a determination dated September 15, 2004 Vernon was awarded benefits based on a finding that Vernon's depression met Listing 12.04. The court observes that Vernon was self-represented at the April 16, 2010 hearing, and that the ALJ did not have an opinion from a treating source concerning Vernon's mental impairments. Dr. Wiley's opinion contains limitations that, if accepted, may render Vernon entitled to continued disability benefits.[2] Therefore, the court finds that this additional evidence raises a question as to whether the ALJ's decision is supported by substantial evidence and the court is constrained to recommend remand on this issue.

**D.     Motion to Remand**

Also pending before the court is a motion to remand in light of additional evidence that was submitted to the Appeals Council after the deadline for such submissions and was not considered by the Appeals Council. These records appear to consist of another opinion from Dr. Reeves, a

---

[2] The court expresses no opinion as to whether consideration of Dr. Wiley's opinion in conjunction with the medical evidence already discussed by the ALJ should lead to a finding that Vernon is entitled to disability benefits. Analysis of this additional evidence may well not affect the ALJ's conclusion. However, on this record, the court cannot say that the ALJ's conclusions are supported without such consideration.

Page 14 of 16

PJG

couple of medical records from 2002, and a pharmacy prescription profile for Vernon. The parties disagree as to the propriety of considering this evidence. In light of the court's recommendation that this matter be remanded for further consideration of the opinion of Dr. Wiley, the court finds that it need not address this issue as it may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Further, Vernon may present this argument for consideration in the first instance to the Commissioner on remand.

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for consideration of Dr. Wiley's opinion and any additional evidence the ALJ deems appropriate to consider.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 18, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).nsdal/go;sefhoisrhig